**Appellate Case No. 23-7007**

---

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE TENTH CIRCUIT

---

## JAMES R. EZELL, III
**Plaintiff-Appellant**

**v.**

## DAMON HININGER, et al.,
**Defendants-Appellees**

---

**Appeal from United States District Court for the Eastern District of Oklahoma of Order dated January 25, 2023, Granting Defendants' Motion For Summary Judgment.**

**Order entered by the United States District Judge John F. Heil, III Case No. CIV-19-302-JFH-JAR**

---

## DEFENDANTS-APPELLEES'
## ANSWER BRIEF

---

**NO ORAL ARGUMENT REQUESTED**
**BY  DEFENDANTS-APPELLEES**
By: DARRELL L. MOORE, OBA 6332
COURT PLACE AT NORTH VANN
P.O. BOX 368
PRYOR, OK  74362
(918) 825-0332

ATTORNEY FOR DEFENDANTS-APPELLEES - CoreCivic, Yates, Gentry, Underwood, Perez, Patterson, Ade, Pfaff, Hoover, Hininger, Pierce, Bullock, Keys and Smith

# TABLE OF CONTENTS

CERTIFICATE OF COUNSEL ........................................................2

BACKGROUND ..............................................................................2

STATEMENT OF CASE ...................................................................3

STATEMENT OF ISSUE ..................................................................4

STANDARD OF REVIEW ................................................................4

ARGUMENT AND AUTHORITY ....................................................5

PROPOSITION:  The District Court Did Not Err.
Plaintiff-Appellant Failed To Properly Exhaust
Administrative Remedies ..................................................................5

CONCLUSION ...............................................................................17

NECESSITY OF ORAL ARGUMENT ...........................................17

CERTIFICATE OF COMPLIANCE ................................................18

CERTIFICATE OF DELIVERY .....................................................19

EXHIBIT 1: Orders dated January 25, 2023 ...........................20-46

# TABLE OF AUTHORITIES

**Statutes**

42 U.S.C. § 1983 .................................................................................. 3, 5

42 U.S.C. § 1997(a) ............................................................................. 5, 15

**Rules**

Fed. R. App. P. 32(a)(7)(C) ................................................................. 18

Fed. R. App. P. 34(a) .......................................................................... 17

Tenth Cir.R. 31.3 ................................................................................. 2

Tenth Cir.R. 34.1 ................................................................................. 17

**Cases**

Booth v. Churner, 532 U.S. 731, 121 S. Ct. 1819,
149 L. Ed. 2d 958 (2001) ..................................................................... 16

Fields v. Okla. State Penitentiary, 511 F.3d 1109,
1112 (10th Cir. 2007) ........................................................................... 5

Gallagher v. Shelton, 587 F.3d 1063, 1067
(10th Cir. 2009) .................................................................................... 5

Jernigan v. Stuchell, 304 F.3d 1030, 1032
(10th Cir. 2002) .................................................................................... 5

Jones v. Bock, 127 S.Ct. 910 (2007), at 918-919 ............................... 5,6,15

Patel v. Fleming, 415 F.3d 1105, 1108 (10th Cir.2005) ...................... 4

Porter v. Nussle, 534 U.S. 516, 122 S.Ct. 983 (2002) ......................... 5

<u>Ross v. County of Bernalillo</u>, 365 F.3d 1181,
1184 (10th Cir. 2004) ........................................................................ 6

<u>Woodford v. Ngo</u>, 548 U.S. 81, 126 S.Ct. 2378,
2387 (2006) ........................................................................ 15

<u>Yousef v. Reno</u>, 254 F.3d 1214,
1216 n. 1 (10th Cir.2001) ........................................................................ 16

**Prior / Related Appeals:**

Counsel is unaware of any actually "related" appeals, other than the present action.

## UNITED STATES COURT OF APPEALS
## FOR THE TENTH CIRCUIT

**JAMES R. EZELL, III,**

          **Plaintiff-Appellant,**

**vs.**

**DAMON HININGER, et. al.,**
      **Defendants-Appellees.**

**Case No. 23-7007**

---

### DEFENDANTS-APPELLEES' ANSWER BRIEF

---

COME NOW Defendants-Appellees CoreCivic, Yates, Gentry, Underwood, Perez, Patterson, Ade, Pfaff, Hoover, Hininger, Pierce, Bullock, Keys and Smith (hereinafter "Defendants-Appellees") by and through their attorney of record, Darrell L. Moore, OBA #6332, submitting their Answer Brief in response and in opposition to the Opening Brief of Plaintiff-Appellant Ezell.

The District Court did not err in granting the Defendants-Appellees' Motion for Summary Judgment.  As was clearly set forth in the Defendants' Motion, and as was recounted in detail by the District Court, Mr. Ezell had failed to properly exhaust administrative remedies before bringing his action forward to the District Court. The District Court specifically reviewed each submission in detail and found that Mr. Ezell repeatedly failed to follow the

clearly outlined exhaustion procedures. Mr. Ezell disregarded information or responses he received from the Grievance Coordinator on how to correct or to properly submit grievances. The Grievance Coordinator at Davis Correctional Facility testified by affidavit that Mr. Ezell failed to follow instructions provided to him.

The evidence presented below was clear – Mr. Ezell failed to exhaust administrative remedies as to his claims. The District Court correctly found that Plaintiff-Appellant had failed to exhaust administrative remedies before bringing his action forward to the District Court.

There was no error below.  This Honorable Court should affirm the decisions of the United States District Court for the Eastern District of Oklahoma.

## CERTIFICATE OF COUNSEL

In accordance with Tenth Cir. R. 31.3, counsel for Defendants-Appellees certifies that he is filing a single brief on their behalf.

## BACKGROUND

Plaintiff-Appellant Ezell (ODOC # 237370) appears pro se and is an inmate under the care and custody of the Oklahoma Department of Corrections.  During all times relevant to the allegations against the CoreCivic Defendants-Appellees, Mr. Ezell was housed at Davis

Correctional Facility pursuant to a contract between CoreCivic and the Oklahoma Department of Corrections.  Plaintiff-Appellant is presently confined by the Oklahoma Department of Corrections at Great Plains Correctional Facility, in Hinton, Oklahoma.  The individual Defendants-Appellees were at all times relevant to the Plaintiff-Appellant's allegations, employees of CoreCivic, at Davis Correctional Facility.

Plaintiff-Appellant brought this action pursuant to the provisions of 42 U.S.C. § 1983.

## STATEMENT OF THE CASE

1.    On September 9, 2019, Plaintiff-Appellant Ezell initially filed this action with the United States District Court for the Eastern District of Oklahoma. [ROA Vol I., Doc# 010110842420 Pgs. 25-38]

2.    Defendants-Appellees filed an Answer in this matter on January 12, 2021. [ROA Vol II., Doc# 010110842421, Pgs. 567-578].

3.    Defendants-Appellees then filed a Motion for Summary Judgment on February 2, 2022, asserting that Ezell had not properly exhausted administrative remedies as to his claims prior to bringing them forward to the Court. [ROA Vol III., Doc# 010110842422, Pgs. 155-352].

4.    Plaintiff-Appellant chose not to respond to CoreCivic Defendants' Motion for Summary Judgment, as noted by the District Court

in the Order dated January 25, 2023. [ROA Vol III., Doc# 010110842422, Pg. 363-389].

5.    On January 25, 2023, the District Court entered an Opinion and Order granting the Defendants' Motion for Summary Judgment. [ROA Vol. III., Doc# 010110842422, Pg. 363-389].

6.    It is from this Order that the Plaintiff-Appellant has filed this appeal with regards to the CoreCivic Defendant-Appellees.

## STATEMENT OF ISSUE

1.    Whether the District Court erred by granting Defendants-Appellees' Motion for Summary Judgment.

## STANDARD OF REVIEW

Mr. Ezell appeals from an Order of the United States District Court for the Eastern District of Oklahoma granting Defendants' Motion for Summary Judgment because of his failure to first exhaust administrative remedies.

This Honorable Court has repeatedly articulated it's standard for review of such dismissals, stating, "We review de novo a district court's dismissal of an inmate's suit for failure to exhaust his or her administrative remedies." *See* Patel v. Fleming, 415 F.3d 1105, 1108 (10th Cir.2005); *See*

*also* <u>Gallagher v. Shelton</u>, 587 F.3d 1063, 1067 (10th Cir. 2009); <u>Fields v.</u>

<u>Okla. State Penitentiary</u>, 511 F.3d 1109, 1112 (10th Cir. 2007); <u>Jernigan v.</u>

<u>Stuchell</u>, 304 F.3d 1030, 1032 (10th Cir. 2002).

## ARGUMENT AND AUTHORITIES

## <u>PROPOSITION</u>:

### THE DISTRICT COURT DID NOT ERR. PLAINTIFF-APPELLANT FAILED TO *PROPERLY* EXHAUST ADMINISTRATIVE REMEDIES

**a. Exhaustion of Administrative Remedies is Mandatory.**

The Prison Litigation Reform Act (PLRA), enacted by the Congress

in 1996, directs prisoners to exhaust administrative remedies before

initiating legal action complaining of prison conditions under section 1983.

As noted by the District Court, the PLRA states, as follows:

> "No action shall be brought with respect to prison conditions under
> section 1983 of this title, or any other Federal law, by a prisoner
> confined in any jail, prison, or other correctional facility until such
> administrative remedies as are available are exhausted." 42 U.S.C.
> §1997e(a).

In <u>Jones v. Bock</u>, 127 S.Ct. 910 (2007), at 918-919, the Supreme

Court, referring to their previous decision in <u>Porter v. Nussle</u>, 534 U.S. 516,

122 S.Ct. 983 (2002), stated, "There is no question that exhaustion is

mandatory under the PLRA and that unexhausted claims cannot be brought

in court." It makes no difference that Plaintiff-Appellant is a state inmate

held in a privately-operated facility. The exhaustion requirement applies fully when the plaintiff is a federal or state inmate held in a privately-operated facility. *See* Ross v. County of Bernalillo, 365 F.3d 1181, 1184 (10th Cir. 2004), abrogated in part on other grounds, Jones v. Bock, 549 U.S.199, 127 S.Ct. 910 (2007).

**b. An exhaustion process was in place at Davis Correctional Facility.**

The District Court correctly noted the process for inmates to use in exhausting administrative remedies at DOC facilities and private facilities is set forth in the Oklahoma Department of Corrections Grievance Policy OP-090124. [Exhibit 3 to Defendants' Motion for Summary Judgment, ROA Vol. III., Doc# 010110842422, Pgs. 204-227].

As outlined below and acknowledged by the District Court, DOC OP 090124 sets out the specific steps an inmate must complete in order to exhaust administrative remedies. The policy provides specific information and instruction for the submission of grievances and exhaustion of administrative remedies. Paragraph 090124(IV)(B) of the grievance policy specifically states that an inmate must first utilize the informal resolution process prior to submission of formal grievances. If the inmate is not satisfied with the results of the informal resolution process, the inmate may file a formal grievance within 15 days of the date of the incident. If a

grievant is not satisfied with the decision of the Facility Grievance Officer, the grievant may appeal by resubmitting the grievance.  If the inmate is still unsatisfied, the inmate may make a final appeal to the Oklahoma DOC Administrative Review Office. *See* DOC OP-090124(VIII)(C), page 12, submitted as Exhibit 1 to Defendants' Motion for Summary Judgment, ROA Vol. III., Doc# 010110842422, Pgs. 216-217.

DOC OP-090124(X)(A) additionally states that if prison officials determine that an inmate has abused the grievance process, his ability to submit a grievance may be restricted.  As set forth in the administrative remedies policy, grievance restriction does not prevent an inmate from utilizing the grievance process; it instead adds additional requirements. While on grievance restriction, an inmate must submit an affidavit containing a complete, accurate, and legible list by grievance number, date, description, and disposition at each level for each of the grievances he submitted within the previous twelve (12) months.  Each page must be legible, signed, and verified, and the document must be notarized at the end of the text.  If the inmate does not comply with the requirements for submitting a grievance or appeal while on grievance restriction, the grievance or appeal will not be answered.  If the inmate complies with the requirements, the grievance or appeal may proceed.

**c. Plaintiff-Appellant Ezell's use of the Administrative Remedies Process was not complete.**

Mr. Ezell's Grievance Records were attached to Defendants-Appellee's Motion as Exhibit 4 to Defendants' Motion for Summary Judgment, ROA Vol. III., Doc# 010110842422, Pgs. 228-352.

Plaintiff-Appellant submitted eighteen (18) grievances, some of which were related to the claims brought in his lawsuit, but many were not. After a careful review, none of Mr. Ezell's grievances that were actually related to issues he brought forward in his lawsuit had been properly submitted and appealed through to exhaustion.  *See* Affidavit of Terry Underwood, Grievance Coordinator, attached as an Exhibit to Defendants' Motion for Summary Judgment, ROA Vol. III., Doc# 010110842422, Pgs. 180-202.

Grievance No. 2018-138 was returned unanswered noting procedural defects. Instead of following instructions and correcting and resubmitting, Mr. Ezell instead appealed directly to the OK DOC ARA. That appeal was returned unanswered by the OK DOC ARA because of procedural defects. No issues were exhausted by the submission of this Grievance.

Grievance No. 2019-104 was returned unanswered because of procedural deficiencies.  Mr. Ezell did resubmit, but the resubmission still contained deficiencies.  As a result, no issues were exhausted by the submission of this Grievance.

Grievance No. 2019-144 was not related to any claim in Plaintiff's lawsuit.

Grievance No. 2019-170 was related to an allegation he had been denied access to library computer time and about the law library supervisor. This issue was exhausted, but Mr. Ezell did not present a related claim to the Court.

Grievance No. 2019-176 was returned unanswered on April 17, 2019, with a notation that the Request to Staff had not been consistent with the issue raised in the grievance. He was given ten (10) days to correct and resubmit, but he chose not to do so. No issues were exhausted by this grievance.

Grievance No. 2019-236 was returned unanswered noting several procedural defects. No issues were exhausted by this grievance.

Grievance No. 2019-254 obtained relief for Mr. Ezell, but the issue that had been exhausted was not related to claims in this lawsuit.

Grievance No. 2019-255 was marked as an "emergency." The grievance was returned unanswered noting several procedural defects. Ezell was given ten (10) days to correct and resubmit the grievance. He did not do so. No issues were exhausted by this grievance.

DOC OP-090124(X)(A) states that if prison officials determine that an inmate has abused the grievance process, his ability to submit a grievance may be restricted.  Grievance restriction does not prevent an inmate from utilizing the grievance process; it instead adds additional requirements. While on grievance restriction, an inmate must submit an affidavit containing a complete, accurate, and legible list by grievance number, date, description, and disposition at each level for each of the grievances he submitted within the previous twelve (12) months.  Each page must be legible, signed, and verified, and the document must be notarized at the end of the text.  If the inmate does not comply with the requirements for submitting a grievance or appeal while on grievance restriction, the grievance or appeal will not be answered.  If the inmate complies with the requirements, the grievance or appeal may proceed.

On August 7, 2019, the warden placed Mr. Ezell on grievance restriction. The Grievance Coordinator provided Mr. Ezell a letter of notification from the warden notifying him about being placed on restriction for one year, from August 7, 2019, through August 6, 2020. Ms. Underwood instructed Mr. Ezell on the steps he would need to follow during that one year period.

Mr. Ezell's next grievance submission was No. 2019-267.  That grievance was returned unanswered noting several procedural defects. He was given ten (10) days to correct and resubmit the grievance.  Instead of resubmitting, Mr. Ezell submitted an appeal to the OK DOC ARA which was returned unanswered for procedural defects. No issues were exhausted by this grievance submission.

In Grievance No. 2019-268, Mr. Ezell complained about being denied proper grievance and appeal forms. That grievance was returned unanswered noting several procedural defects.  He was given ten (10) days to correct and resubmit the grievance.  Instead of doing so, he again submitted an appeal to the ARA, which was returned unanswered.  No issues were exhausted by this grievance submission.

In Grievance No. 2019-291, Mr. Ezell complained about being denied access to review his field file.  That grievance was answered indicating that after further review it was determined that Plaintiff's case manager had received a list from Plaintiff of requested documents in lieu of the entire file, and that the Case Manager had pulled the requested documents and gave him copies.  Mr. Ezell appealed that decision to the OK DOC ARA. That appeal was returned unanswered, with a notation that Mr. Ezell had been placed on grievance restriction, and that the proper documentation was not

attached.  He was given ten (10) days to correct and resubmit the appeal, but there is no indication he did so.

Grievance No. 2019-297 was also returned to Mr. Ezell unanswered noting certain procedural defects and informing him that he could not resubmit because of his continued failure to properly submit the grievance. Mr. Ezell filed an appeal to the DOC's ARA.  The appeal was returned unanswered noting that Mr. Ezell had been placed on grievance restriction, and proper documentation had not been included with his submission.  He was granted one final opportunity to resubmit the grievance.  However, Mr. Ezell chose not to resubmit, and no issues were exhausted through this grievance.

Grievance No. 2019-299 was related to a request for transfer.  Mr. Ezell initially submitted a Request to Staff to Case Manager Pfaff.  Then in the submitted grievance he stated his case manager was retaliating because he had filed grievances.  The grievance was returned unanswered noting numerous procedural defects.  No issues were exhausted by this grievance.

Grievance No. 2019-342 was designated by Mr. Ezell as an "emergency."  The grievance asserted he was denied access to a notary.  The grievance was returned unanswered noting numerous procedural defects including that the grievance was determined to not be an emergency. Mr.

Ezell was granted ten (10) days to correct and resubmit. Instead, he submitted an appeal to the OK DOC ARA which was returned unanswered with similar notations. He was again granted a final opportunity to resubmit. He did so, however, this submission also was returned to him unanswered for procedural defects. No issues were exhausted through the re-submission of this grievance.

The next grievance submitted was Grievance No. 2019-343. The Request to Staff related to complaints of being denied services. The request was responded to indicating it was unclear what relief he was requesting so the Grievance was returned unanswered. Mr. Ezell appealed that decision to DOC, but the appeal was returned to him unanswered. He was given an additional ten (10) days to correct the appeal and resubmit, however, he chose not to do so. No issues were exhausted by this grievance submission.

Grievance No. 2019-344 related to access to a chair when he was in the law library cage on the maximum-security Echo Charlie inmate housing unit. The grievance was returned unanswered noting numerous procedural defects including that he was on grievance restriction and had not included the proper documentation. Mr. Ezell appealed the decision to the OK DOC ARA, and that appeal was returned unanswered noting Plaintiff was on

grievance restriction and the proper documentation had not been attached. No issues were exhausted by this submission.

Grievance No. 2019-365 involved access to a notary. The grievance was returned unanswered because he had not timely submitted a Request to Staff, and he was on grievance restriction and had not submitted the proper documentation.  Mr. Ezell appealed that decision to the OK DOC ARA, which also returned the appeal unanswered for procedural deficiencies. He was given ten (10) days to correct the appeal and resubmit, but he chose not to do so. Therefore, no issues were exhausted by this submission.

In Grievance No. 2019-401 Mr. Ezell filed a grievance complaining about a misconduct that had been issued to him and asking for disciplinary action against Correctional Officer Key. The grievance was returned unanswered because of procedural defects. No issues were exhausted by this submission.

Mr. Ezell did not submit any additional relevant grievances prior to filing his complaint with the District Court on December 19, 2018.

**d. Proper exhaustion is required.**

Noting that the word "exhausted" is a term of art in both administrative law and habeas law, Justice Alito writing for the Court in

Woodford v. Ngo, 548 U.S. 81, 126 S.Ct. 2378, 2387 (2006), stated as

follows:

> "With this background in mind, we are persuaded that the PLRA
> exhaustion requirement requires proper exhaustion."
> And,
> "Construing §1997e(a) to require proper exhaustion also fits with the
> general scheme of the PLRA, whereas respondent's interpretation
> would turn the provision into a largely useless appendage."

As regards whether an inmate had properly exhausted administrative

remedies, Chief Justice Roberts, writing for the Court in Jones v. Bock, 127

S.Ct. 910, 922 (2007), stated "In Woodford, we held that to properly exhaust

administrative remedies prisoners must 'complete the administrative review

process in accordance with the applicable procedural rules,' rules that are

defined not by the PLRA, but by the prison grievance process itself."

Of the eighteen (18) grievances filed by Mr. Ezell none of the

grievances were properly pursued through to exhaustion of administrative

remedies.

As regards determination of "proper exhaustion," Chief Justice

Roberts noted in Jones v. Bock, at 923, that: "We leave it to the court below

in the first instance to determine the sufficiency of the exhaustion in these

cases." Mr. Ezell' failure to pursue administrative remedies through to the

final step in the remedies process cannot be considered "sufficient" or

"proper."

Mr. Ezell asserts in his Appeal that he properly exhausted, or that when he did not, it was because he had been denied assistance and/or services by the facility.

As the record submitted to the District Court and as is available to his Honorable Court, the facility's Grievance Coordinator repeatedly outlined for Mr. Ezell what he needed to do to properly submit grievances or appeals to the final step in the remedies process. But Mr. Ezell repeatedly ignored that advice and instruction.

Mr. Ezell clearly had access to the administrative remedies process. His filings simply were not proper.  Because Mr. Ezell did not properly follow the procedural rules and processes, he did <u>not</u> accomplish exhaustion of administrative remedies as to his issues.  *See* <u>Booth v. Churner</u>, 532 U.S. 731, 740–41 (2001); *see also* <u>Yousef v. Reno</u>, 254 F.3d 1214, 1216 n. 1 (10th Cir.2001).

The United States District Court for the Eastern District of Oklahoma properly found that Plaintiff-Appellant failed to exhaust administrative remedies.  The Court did not err in granting the Defendants-Appellees' Motion for Summary Judgment.

## CONCLUSION

That District Court did not err. The District Court's decisions were consistent with the record presented, the applicable law, clearly established standards of review, and the Federal Rules of Civil Procedure. Thus, this Honorable Court should affirm the Order of the United States District Court for the Eastern District of Oklahoma.

## NECESSITY OF ORAL ARGUMENT

Oral argument would not materially assist in the determination of this appeal. *See* Federal Rules of Appellate Procedure 34(a), Tenth Circuit Rule 34.1. This cause should therefore be submitted without oral argument.

Respectfully submitted,
Defendants-Appellees

By: _s/ Darrell L. Moore_
Darrell L. Moore, OBA #6332
P.O. Box 368
Pryor, OK  74362
(918) 825-0332
jrmpc@swbell.net
Attorney for Defendants-Appellees

## CERTIFICATE OF COMPLIANCE

As required by FRAP 32(a)(7)(C), I certify that this brief is proportionally spaced and contains 3421  words.

*Complete one of the following*:
[x] I relied on my word processor to obtain the count and it is Microsoft Word, by Microsoft Office.

[ ] I counted five characters per word, counting all characters including citations and numerals.

*s/ Darrell L. Moore*
DARRELL L. MOORE

## CERTIFICATE OF DELIVERY

This is to certify that on September 27, 2023, a true and correct copy of the Appellees' Brief was mailed, postage prepaid, and to the following:

James R. Ezell, III   DOC #237370
House A-4-205, Great Plains Correctional Center
700 Sugar Creek Road
Hinton, OK 73047

I further certify that on September 27, 2023, the original and seven true and correct copies of the Appellees' Brief were mailed, postage prepaid, and e-submitted, to:

Christopher M. Wolpert,  Clerk of the Court
United States Court of Appeals for the Tenth Circuit
Byron White United States Courthouse
1823 Stout Street, Denver, CO 80257

I further certify that all privacy redactions have been made to the attached document, and with all exception of those redactions, the document submitted in digital form is an exact copy of the written document filed with the clerk, and the digital submission has been scanned for viruses by Kaspersky, and according to the program is free of viruses.

*s/ Darrell L. Moore*
DARRELL L. MOORE

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF OKLAHOMA

JAMES EZELL, III,

                              **Plaintiff,**

v.

                                             **Case No. 19-CV-302-JFH-JAR**

DAMON HININGER, et al.,

                           **Defendants.**

## OPINION AND ORDER

On April 11, 2022, this Court granted a motion to dismiss or for summary judgment, filed by officials of the Oklahoma Department of Corrections ("DOC") with respect to Claim One of the amended complaint filed by Plaintiff James Ezell, III ("Ezell").  Dkt. No. 56; Dkt. No. 136; Dkt. No. 214.

The Court now has before it for consideration a motion for summary judgment by the remaining defendants who are officials of Davis Correctional Facility ("DCF") in Holdenville, Oklahoma [Dkt. No. 204] and a special report prepared by DCF officials at the direction of the Court, in accordance with *Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978) [Dkt. No. 141].  Ezell has not filed a response to the motion.

Ezell is a pro se prisoner in the custody of the DOC who presently is incarcerated at Lawton Correctional Facility in Lawton, Oklahoma.  He brought this action under the authority of 42 U.S.C. § 1983, seeking among other things, relief for alleged constitutional violations occurring during his incarceration at DCF.  He is requesting a preliminary injunction to prevent Defendants' continued denial of access to the courts, discrimination, and retaliatory behavior.  He also requests

protection of other inmates who are willing to provide affidavits in support of his claims.  Dkt. No. 56 at 15.

The remaining Defendants are Damon Hininger, CoreCivic CEO, and the following DCF officials:  Warden James Yates, Deputy Warden Gentry, Deputy Warden Perez, Grievance Coordinator Terry Underwood, Law Library Supervisor Jessica Patterson, Unit Manager Tiffany Ade, Unit Manager S. Pfaff, Unit Clerk Carla Hoover; Correctional Officer Ms. Pierce, Correctional Officer Mr. Bullock, Sgt. Keys, and Correctional Officer Andrew Smith.[1]

## EZELL'S ALLEGATIONS

### I.    Claim Two

Ezell alleges in Claim Two of the amended complaint that his First, Sixth and Fourteenth Amendment rights were violated on May 6, 2018, February 14, 2019 and March 9, 2019.  Although Ezell's claim is unclear, he appears to be asserting that on the above three dates, Defendant Carla Hoover provided outdated forms to the Echo Maximum Unit to access courts, and she was an untrained notary.  Defendant Patterson, the law library supervisor, allegedly refused to contact the general counsel to obtain Ezell's requested case law.  Dkt. No. 56 at 8-9.

Ezell alleges he was allowed to speak to another inmate who was assigned to Echo Unit as a law clerk, but who was inadequate and untrained in the law.  When Ezell submitted a request to the law library, he was denied access by Defendant Pfaff.  Defendant Ade permitted this denial of access to the law library.  Ezell claims he was threatened with a misconduct by Ade and Pfaff and "medium yard" by Patterson for lying to staff about being denied access to the courts.  Ezell further

---

[1] DCF defendants Pierce, Bullock, Keys, and Smith were inadvertently omitted from the list of DCF defendants in the Court's previous Opinion and Order.  Dkt. No. 214 at 1.

asserts the threats were made to prevent him from filing grievances.  He was not issued a misconduct.  *Id.* at 9.

## II.  Claim Three

Ezell alleges in Claim Three that his First and Fourteenth Amendment rights were violated on April 4, 2018 and June 13, 2019.  He claims that Grievance No. 2019-1001-170 was granted by Warden Yates after further investigation by Law Library Supervisor Patterson.  Ezell did not receive a misconduct for lying to staff.  The library clerk was removed in late July 2019, and no law library supervisor was trained and posted on Echo Maximum Unit with trained law clerks to provide the services that are required.  Grievance 2019-1001-236 alleged retaliation by a law clerk, however, a review of video footage proved that Lt. Bowman denied access.  The law clerk was directed to provide Ezell additional time in the law library.  Dkt. No. 56 at 10-11.

Ezell further alleges that under the direction of Pfaff, Correctional Officer Adkins and an Echo Unit law clerk took the computer and refused to feed Ezell when he was in a cage.  He also claims his Exhibits 1-4 were submitted on the wrong forms provided by Ms. Hoover, when the correct forms should have been readily available.  Further, Defendants Pfaff, Ade, Hoover, Yates, and Patterson made the offender grievance process inadequate.  *Id*. at 11.

## III.  Claim Four

In Claim Four, Ezell alleges that on his First, Sixth and Fourteenth Amendment rights were violated as follows June 24, 2019, August 6, 2019 and August 15, 2019 :

A.  Ezell submitted a grievance with attached Request to Staff ("RTS") to Ms. Underwood on June 24, 2019.  The RTS for Grievance No. 19-267 was destroyed, and Ms. Patterson denied Ezell access to the court.  Dkt. No. 56 at 10.

B.     On August 5, 2019, Grievance Nos. 19-297 and 19-299, submitted to Ms. Underwood, were returned on August 13, 2019 by Underwood with the intent of destroying the grievance appeal by not timely providing Ezell the grievance restriction.  The grievance restriction arrived August 15, 2019.  Because it takes four (4) days from August 15, 2019 to obtain a notary, six (6) days would have passed before it reached the Administrative Review Authority ("ARA").  Ezell had logged a grievance restriction.  On August 20, 2019, and August 27, 2019, Hoover refused to notarize the grievance restriction affidavit at the direction of Terry Underwood.  *Id.*

C.     On October 14, 2019, Hoover came to Ezell's door at his request for a notary.  She denied having stated Ezell had filed a lawsuit against her and refused to notarize an affidavit addressed to the Eastern District at the direction of Diana Jones.  They continue to deny OP-030115 and OP-090124.  *Id.* at 11.

D.     On November 1, 2019, Ezell called Correctional Officer Ryan to EA-219 and requested that Ryan call Law Library Supervisor Patterson concerning Ezell's deadline set by the Oklahoma Court of Criminal Appeals in Case No. PC-2018-819.  Patterson denied law library access.  On November 13, 2019, Patterson wrote a misconduct for Ezell based on his litigation in this case concerning law library access.  *Id.*

## IV.   Claim Five

Ezell claims that  his First, Sixth, Eighth and Fourteenth Amendment rights were violated on June 26, 2019, September 12, 2019 and November 13, 2019 as follows:

A.     Echo Unit is without a law library that meets the requirement established in *Bounds v. Smith* per OP030115 access to Court.  *Id.* at 12.

B.     Law Library Supervisor Patterson and Grievance Coordinator Underwood failed to provide correct forms to Echo Unit.  Unit Clerk Hoover was assigned to provide forms to Echo as

well as notary services.  None of the above officials are trained in the law, nor is there a trained law clerk assigned to Echo.  *Id.*

C.       On June 24, 2019, Ezell provided grievances to Mailroom Supervisor Ms. West with an attached RTS.  On June 26, 2019, the RTS was destroyed by Ms. Underwood.  *Id.*

D.       On August 20, 2019, Ms. Hoover denied notary service under the direction of Ms. Underwood, Deputy Warden Perez, and Deputy Warden Gentry.  In addition, Ms. Dorman directed Mailroom Supervisor West not to notarize for Echo Maximum Unit.  Law Library Supervisor Patterson is not a notary.  *Id.*

E.       On September 12, 2019, Ms. Underwood returned three (3) grievances submitted on August 27, 2019, through Mailroom Supervisor West, then retaliated by issuing a misconduct on August 29, 2019.  The denial and destruction of RTSs and the deliberate refusal to log three (3) timely grievances denied Ezell's right to exhaust grievances and petition the government under the First and Fourteenth Amendments.  *Id.* at 12-13.

F.       Defendants Pfaff, Ade and Hoover deprived Ezell of his right of access to the courts through available forms and notary services.  Ms. Patterson, the medium yard law library supervisor denied access to the courts, because she is untrained and without a trained law clerk. Ms. Underwood directed Ms. Hoover not to notarize a grievance restriction affidavit to prevent legal victory and equal opportunity for notary services, because medium yards are allowed notaries and access to court in the actual library.  *Id.* at 13.

G.       Warden Yates placed Ezell on grievance restriction on August 7, 2019.  Deputy Warden Gentry has intentionally directed the Law Library Supervisor to deny access to Ezell even with an actual deadline.  On November 1, 2019 Ms. Patterson denied access, stating Ezell did not have a deadline.  On November 4, 2019, Ezell submitted an RTS to Law Library Supervisor

Patterson to resolve the issue.  On November 7, 2019, Ezell filed a motion for appointment of counsel in this action, and on November 12, 2019, Ms. Patterson wrote a disciplinary offense report based on Ezell's litigation in this case.  *Id.*

H.      Warden Yates is directly responsible for assuring Ezell's access to courts.  *Id.* at 14.

I.      A January 8, 2019, an OCCA order in Case No. PC-2018-819 apparently cited a one-year limitation period which Law Librarian Patterson rejected because she is untrained.[2]  The assigned clerks also are untrained.  Ms. Patterson directly retaliated based on Ezell complaint after service of summons.  *Id.*

J.      On September 9, 2019, no trained law library clerk was assigned to the Echo Maximum Unit by Warden Yates or Assistant Warden Gentry.  General Counsel David Cinotta approved the denial of access to the courts, when a trained law library clerk is supposed to be available for offenders Monday through Friday.  Also, a trained law library supervisor should be available.  Since Ezell has filed grievances, his overall condition has worsened, instead of improving.  His use of administrative remedies resulted in destruction of an RTS by Grievance Coordinator Underwood, disregarded proof, and threats of grievance restriction.  Underwood returned grievances to conceal corruption.  *Id.*

K.      The warden arbitrarily and unconstitutionally decided to exclude a student legal assistant.  *Id.*

### STANDARD OF REVIEW

---

[2] The Oklahoma State Courts Network docket for the OCCA's Case No. PC-2018-819 indicates that on January 8, 2019, the trial court's denial of Ezell's post-conviction application was affirmed. His grounds for relief were procedurally barred or waived.  There is no mention of a one-year filing deadline.

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine if the evidence is such that "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is material if it "might affect the outcome of the suit under the governing law." *Id.* In making this determination, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. A party opposing a motion for summary judgment, however, may not simply allege there are disputed issues of fact; rather, the party must support its assertions by citing to the record or by showing the moving party cannot produce admissible evidence to support the facts. Fed. R. Civ. P. 56(c). Thus, the inquiry for this Court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

## GRIEVANCES

The DCF/CoreCivic defendants allege Ezell failed to first properly exhaust the administrative remedies for his claims before bringing the claims to this Court. Dkt. No. 204 at 18-25. According to the special report, Ezell submitted eighteen (18) grievances during the time period set forth in his amended complaint, April 2018 through November 2019. Dkt. No. 141 at 11. Of those eighteen (18) grievances, fifteen (15) were not pursued by him through to administrative exhaustion. *See* Affidavit of Terry Underwood, DCF Grievance Coordinator. Dkt. No. 204-2 at 4.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

DOC Policy OP-090124, "Inmate/Offender Grievance Policy" sets forth the steps an inmate must follow to exhaust administrative remedies for a claim. The administrative remedies

policy requires an inmate to initially attempt to resolve any issue through informal resolution.  If

that is unsuccessful, he may submit an RTS.  If the complaint still is not resolved, he then may file

a grievance.  If the grievance also does not resolve the issue, the inmate may appeal to the ARA at

the DOC headquarters.  The administrative process is exhausted only after all of these steps have

been taken.  *See* Affidavit of Terry Underwood, DCF Grievance Coordinator.  Dkt. No. 204-2 at

3.  *See also* Policy OP-090124, Dkt. No. 204-3 at 7-17.  The grievance policy specifically

authorizes the return of grievances unanswered if a grievance is not properly submitted.  *See* Policy

OP-090124, Dkt. No. 204-3 at 10-11 ¶ VI.A.5.

Defendant Underwood alleges in his affidavit that Ezell repeatedly failed to follow the

required steps of the grievance policy.  Ezell also repeatedly failed to follow the instructions that

were provided by Underwood.  Underwood repeatedly attempted to discuss the numerous issues

with the deficient grievances and how to correct them, however, Underwood often was met with

Ezell's screaming or demeaning comments.  Ezell's failures to properly submit his grievances

resulted in many of Ezell's grievance submissions being returned unanswered to him for correction

and re-submission.  Dkt. No. 204-2 at 6.

Ezell filed the following grievances during the relevant period:

**Grievance No. 2018-138:**  Ezell submitted an RTS dated May 20, 2018, addressed to the

law library supervisor, stating Ezell had a verified legal deadline but was not being provided

computer time.  Under the form's section for requested action, Ezell stated he expected to be on

the list every day during his deadline time period, and if DCF could not meet his access needs,

perhaps he needed to be transferred to Oklahoma State Penitentiary.  The timely response to the

RTS noted that Ezell had signed a "deadline completion form" acknowledging that his deadline

had been met and noting that offenders are allowed two (2) hours of library time each week, if requested in advance.  Dkt. No. 204-2 at 5; Dkt. No. 204-4 at 6-7.

Grievance No. 2018-138, which arose from this issue, was received on May 31, 2018.  Dkt. No. 204-4 at 5.  It had been marked by Ezell as an "emergency" grievance.  *Id*.  Ezell requested the following action:

> The problem is Ms. Hassan is not reading the documents provided, she is allowing an offender that has not been approved by the Bar direct her actions of who is placed on the Deadline list, Raven My Deadline is not expired now I expect make up time as this gets resolved or transfer me to (O.S.P.) max, thank you Respectfully.

Dkt. No. 204-2 at 5; Dkt. No. 204-4 at 5.

The grievance was returned unanswered on May 31, 2018, noting that:  (1) Ezell could not grieve a request to transfer to another facility; (2) he could not grieve more than one issue per grievance form, specifically noting he had requested computer time and a transfer; and (3) the nature of the grievance was not an emergency.  The response also noted that Ezell had signed a document on May 15, 2018, verifying that his deadline was completed.  Ezell was granted ten (10) days to correct and resubmit the grievance, however, he instead submitted an appeal to the ARA.  The ARA appeal was returned unanswered, because:  (1) the grievance was not of an emergency nature, (2) he had failed to follow the previous instructions from the reviewing authority to correct and resubmit the grievance, and (3) he was out of time.  Dkt. No. 204-2 at 5-6; Dkt. No. 204-4 at 2-4.

**Grievance No. 2019-104:**   On February 21, 2019, Ezell submitted an RTS to the law librarian, complaining that fines should not be imposed as a sanction if charges are filed against an inmate.  The RTS response stated that Ezell should review his Consolidated Record Card, because such information would be included on that document.  Dkt. No. 204-4 at 18.

Ezell next submitted Grievance No. 2019-104 on this issue, stating he believed the reviewing authority could lawfully take the following action:

> Mr. Ezell is clear on OP-060125 [Range of Allowable sanctions] Fine imposed 20.00 Title [22 § 504.1D]. Alfalfa County is without authority of D.O.C. policy OP-060125. Obtaining the Case law from the DCF Law Clerk are suppose to have access to provide assistance to DCF offenders Access to Court OP-030115 General Counsel Mr. Ezell pro se CF-2018-34.

*Id.* at 17 (spelling and syntax in original).

The grievance was returned unanswered because it was not "specific as to the Complaint, Dates, Places, Personnel Involved and How the Inmate was affected" and the issue was unclear as to what Ezell wanted. *Id*. at 15-16. Underwood alleges Ezell was granted ten (10) days to correct and resubmit the grievance. Dkt. No. 204-2 at 7. Ezell resubmitted Grievance No. 2019-104 on March 21, 2019, with the following statement:

> I Feel that I was clear OP-060125 [Range of allowed sanction] fine imposed 20.00 Title 22 § 504.1.D. prohibits alfalfa County from charges. However, after research of DCF LRC with Echo Law Clerk Mr. Raven [NO] case law was available. Therefore, it was Ms. Patterson's responsibility to Contact General Counsel to provide [Case Law] as I Requested.

Dkt. No. 204-4 at 13 (emphasis and spelling in original).

The resubmitted grievance was returned unanswered on March 28, 2019. The return memorandum gave two reasons for the return: (1) the grievance was not specific as to complaint, dates, places, personnel involved, and how Ezell was affected; and (2) Ezell was out of time because of his continued failure to submit a properly-filed grievance. *Id.* at 11-12.

Grievance No. 2019-104 does not appear to be related to any issues brought forward by Ezell in this lawsuit. *See* Ms. Underwood's affidavit, Dkt. No. 204-2 at 7.

**Grievance No. 2019-144:** On March 11, 2019, Ezell submitted an RTS to Case Manager Pfaff, asking permission to review his jacket for legal purposes and to be directed on how to

conduct the review.  The response stated that the case manager was "trying to find the form."  Dkt. No. 204-4 at 22.

Ezell then submitted a grievance related to this issue on March 26, 2019.  He stated on the grievance form that the action he believed the reviewing authority could take was to "[d]irect Ms. Pfaff my unit case manager to set a date within 2 weeks or before for me to review my personal [sic] as requested only the last 2 years was requested DOC Policy allows offenders this thank you." *Id.* at 21.  The grievance was answered on March 29, 2019, as stated below:

> Inmate Ezell requested that his Case Manager, Shay Pfaff, set a date within 2 weeks or before for Ezell to review his field file for documentation dated within the last 2 years.
>
> After further investigation by Case Manager Pfaff, he will set a time to review Inmate Ezell's field file with him when CM Pfaff has sufficient time.  He is not able to give Inmate Ezell a specific date and time within the next 2 weeks to review Ezell's field file.
>
> Inmate Ezell is Granted Partial Relief in that CM Pfaff will review his field file with him, but is unable to provide a specific date within the next 2 weeks to do so.
>
> Inmate Ezell's RELIEF IS PARTIALLY GRANTED.

*Id.* at 20.  While Ezell was granted partial relief, the issue in Grievance No. 19-144 was not raised in this lawsuit.

**Grievance No. 2019-170:**  Ezell submitted his next grievance to Ms. Patterson, the law library supervisor, on May 13, 2019.  He complained that the library clerk, offender Raven, was denying him access to the library computer.  Ezell stated that a law library supervisor needed to be placed on EC (Echo Charlie) to supervise the law library clerk.  *Id.* at 33.

The librarian's response to the RTS stated she had records showing that Ezell spent three (3) hours and fifteen (15) minutes in the library on March 6, 2019, and on March 11, 2019, he used

the library for six (6) hours.  She further noted that she had instructed the clerk that staff must be present when speaking with Ezell.  *Id.*

Ezell filed Grievance No. 2019-170 on April 3, 3019.  He requested action on his issue as follows:

> See OP-030115 III(A) is clear someone trained will superivor [sic] the law library and [inmates] Mon. - Friday no staff member trained to maintain Law Library is posted on Echo Max to supervisor [sic] Echo Law Clerk Raven to prevent lies to staff, denied access to courts however, D.C.F. has two other staff members trained per OP-030115 that could be posted to assist superivor [sic].

*Id*. at 32.

Grievance 2019-170 was returned unanswered on April 17, 2019.  The reasons for the return were that:  (1) the grievance was not specific as to the complaint, dates, places, personnel involved, and how Ezell was affected; and (2) the grievance was unclear as to what he wanted.  *Id.* at 31-31.

On May 14, 2019, Ezell appealed the return of the grievance to the DOC ARA.  The ARA directed Ms. Underwood to provide Ezell an amended response.  *Id*. at 26.  The amended response, which was provided to Ezell on June 12, 2019, read as follows:

> Inmate Ezell complained that the law clerk on Echo unit denied him access to the law library cage on 3/4/19 and 3/5/19.  He requested that a trained staff member be posted on the Echo unit to supervise the law clerk.

> After further review of the matter, Jessica Patterson, Law Library Supervisor responded that I/M Ezell used the computer in the law library cages 3 hours and 15 minutes on 3/6/19 and 6 hours on 3/11/19.  This exceeds the amount of time that the inmates are allowed to use the computers.  The Law Library cannot guarantee an inmate will use the computers on a specific day.  It depends on the pod schedule for that day.  The law clerk has been instructed not to speak to I/M Ezell unless a staff member is present.

> Inmate Ezell's RELIEF IS GRANTED.

*Id.* at 24 (emphasis in original).  At this point, Ezell had exhausted his administrative remedies.

Dkt. No. 204-2 at 9.  Nonetheless, Ezell again appealed the grievance response to the ARA.  Dkt.

No. 204-4 at 25.  The Director's Designee responded on July 8, 2019, as follows:

> In your grievance appeal, you did check number one and two but did not substantiate your appeal nor did you substantiate your appeal with any authority for an error.  As such, there has been nothing offered to the Director which indicates the reviewing authority's response is not proper.  Therefore, the reviewing authority's response is affirmed.  The inmate/offender will have satisfied the exhaustion of administrative remedies required by 57 O.S. § 564.

*Id*. at 23.  This issue was exhausted, but Ezell did not present it to this Court.

**Grievance No. 2019-176:**  Ezell submitted an RTS dated March 13, 2019, to the law

librarian, complaining about the Echo law clerk.  Under "Action Requested," he wrote:

> Echo Law Clerk Raven should be written up for lying to staff, fired for denying offenders access to court per OP-030115 in retaliation for grievance filed;  Furthermore, transfer from DCF because his to familiar with staff is unfair to offenders at DCF review video footages.

*Id.* at 38 (syntax and spelling in original).  The response to the RTS stated, "Sir, you are being

provided access to meet your deadline time by the clerk.  Further unfounded attacks upon the clerk

will constitute lying to staff."  *Id.*

Ezell submitted a grievance related to this issue on April 5, 2019.  Under the form section

for the requested action, Ezell wrote,

> ODOC forbid (offenders) to have control over other (offenders).  Raven has that because his to familiar with staff a clear disadvantages to other offenders.  I have proved Echo Law Clerk Raven has broken OP-030115 Policy in addition lied to staff in retaliation because Mr. Ezell files grievance for deny access under documented deadlines PC-2018-819 Jan. 8, 2019,  MA-2018-1244 Mar. 8, 2019 additional CF-2018-34 prose case personally appearance April 26, 2019 Court imposed or procedural (court rule) deadline Bound v. Smith, Casey v. Lewis; OP-03115.

*Id.* at 36-37 (spelling and syntax in original).

Grievance No. 2019-176 was returned unanswered on April 17, 2019, with a notation that the RTS was not consistent with the issue in the grievance.  He was given ten (10) days to correct and resubmit the grievance, however, he failed to do so.  No issues were exhausted by this grievance.

**Grievance No. 2019-236:**  On April 3, 2019, Ezell submitted an RTS to Corrections Officer Adkins, complaining about being denied access to the courts.  Under "Action Requested" Ezell stated that he expected the officer to explain his attempt to deny him food.  The RTS response noted that Ezell refused to return to his cell, thereby refusing his meals.  *Id*. at 44.

Ezell submitted Grievance No. 2019-236 on this issue on April 25, 2019.  Under the section concerning the action the reviewing authority could take, Ezell stated,

> No staff member could violate offenders 8th Amendment Right as it relates to Denied lunch and dinner meal of offenders in Echo Max Law Library Cages. C/O Adkins attempted to use denial of Mr. Ezell's food or any other offenders' Food cannot be denied in relation to access to Court OP-030115.

*Id.* at 43.

The grievance was returned unanswered on May 29, 2019.  The return memorandum noted that:  (1) the grievance form was not completed in its entirety on the correct form; and (2) the grievance was not specific as to complaint, dates, places, personnel involved, and how the inmate was affected.  In particular the RTS did not list a specific date of the incident.  Ezell was given ten (10) days to correct and resubmit.  *Id*. at 41-42.  He, however, failed to do so, therefore, no issues were exhausted by this grievance.

**Grievance No. 2019-254:**  Ezell's next grievance was No. 2019-254.  His RTS to Law Librarian Patterson was received on June 4, 2019.  It requested the address for a particular out-of-state attorney.  Ezell indicated he had a right to obtain the address and write to the attorney.  He advised Patterson to "provide the address--or refuse."  The RTS response advised Ezell that the

law library did not have access to information about out-of-state attorneys that are not listed in the Oklahoma directory.  *Id*. at 47.

Ezell submitted a grievance about this issue on June 11, 2019.  The grievance requested that Ms. Patterson be directed to use the available computer to provide access to the requested information, or that the General Counsel be contacted.  *Id.* at 46.  On June 24, 2019, the Reviewing Authority granted relief to Ezell, stating that Ms. Patterson would "look on the computer and endeavor to provide this address for Inmate Ezell." *Id*. at 45.  Again, Ezell exhausted an issue that was not related to his claims in this lawsuit.

**Grievance No. 2019-255:**  On June 14, 2019, Ms. Underwood received Grievance No. 2019-255, which was marked as an "emergency."  The grievance concerned an order Ezell wanted to appeal and his claim that he was being denied access to the courts to do so.  The grievance stated, "DCF has law clerks in that law library that either are retaliating on offenders that expose the lack of legal knowledge required to be a law clerk.  D.C.F. refuses to fix this problem with denied access to courts per OP-030115 either replace Ms. Patterson or law clerks." *Id.* at 50. The grievance was returned unanswered on June 18, 2019, with a memorandum noting that:  (1) only one issue or incident was allowed per grievance; (2) it had been determined that the grievance was not of an emergency nature; and (3) grievances may not request discipline of staff.  Ezell was given ten (10) days to correct and resubmit the grievance.  *Id. at 48-49*.  He, however, did not do so.  No issues were exhausted by this grievance.

**Grievance No. 2019-267:**  The next grievance was No. 2019-267, which was submitted on June 26, 2019.  Ezell's requested action was stated as follows:

> Ms. Patterson L.L.S. continue to allow assigned Legal Law clerks assigned in D.C.F. Law Library to retaliate on Mr. Ezell for filing grievance because denied access to Court per op-030115, either the Law clerk has lack of Legal Knowledge (OK) is Retaliating by giving Ms. Patterson incorrect information and should be

removed from his Job whereas I am held on Echo Max and must depend on his legal knowledge to grant or deny my access to Court because a inmate said so Correction is removal of this <u>offender</u> for his incompetency because clearly anything else would be retaliation for filed grievances.

*Id.* at 57-58 (spelling and emphasis in original).

The grievance was returned unanswered on June 26, 2019.  The return memorandum noted that:  (1) an answered RTS addressed to the correct staff member was not attached as required; and (2) only one issue or incident was allowed per RTS and grievance.  Ezell was given ten (10) days to correct and resubmit the grievance.  *Id.* at 55-56.

Instead of resubmitting, Ezell submitted an appeal to the ARA, which was returned unanswered on July 11, 2019.  The returned appeal noted that:  (1) there was no informal action or RTS included; (2) additional issues submitted in the appeal were not presented in the initial grievance to the reviewing authority; and (3) Ezell had failed to follow previous instructions from the reviewing authority, and was therefore was out of time to properly file a grievance.  *Id.* at 54.  No issues were exhausted by this grievance submission.

**Grievance No. 2019-268:**  Grievance No. 2019-268 was submitted on June 26, 2019.  It concerned Ezell's being denied proper grievance and appeal forms.  The requested action stated, "Per OP-030115 Ms. Patterson is responsible for making all forms ready available per access to court.  It's not Ms. Hoover Job under OP-030115 clearly they were unavailable [the reviewing authority may correct any denial of appeal because the form being unavailable per OP-030115 Access to Court."  *Id*. at 62 (spelling and punctuation in original).

The grievance was returned unanswered on June 26, 2019.  The return memorandum noted that:  (1) an answered RTS form addressed to the correct staff member must be attached; (2) only one issue or incident was allowed per grievance; (3) Ezell was being officially warned that

continued abuse of the grievance process would result in his being placed on grievance restriction; and (4) Ezell was given ten (10) days to correct and resubmit the grievance. *Id*. at 60-61.

Instead of resubmitting, Ezell submitted an appeal to the ARA, which was returned unanswered on July 11, 2019. The returned appeal noted that: (1) no RTS was included; (2) additional issues submitted in the grievance appeal were not presented in the initial grievance to the reviewing authority; and (3) Ezell had failed to follow previous instructions from the reviewing authority and was out of time to properly file his grievance. *Id.* at 59.

**Grievance No. 2019-291:** On July 1, 2019, Ezell submitted an RTS to Case Manager Pfaff, complaining about being denied access to review his field file. Under "Action Requested," Ezell wrote that DOC policy states an offender's case manager will sit down with the offender to review jacket information, and that was exactly what he wanted to do. The response to the RTS stated that pursuant to Policy 060121, Ezell would be allowed to view the documents that are approved. The response also noted that Ezell would be sent a date for the review. *Id*. at 68.

Grievance 2019-291was filed on July 23, 2019. Ezell complained that "[t]he review authority has granted this grievance almost 3 month ago however Echo Unit team at DCF has disregarded Mr. Ezell's Rights refuse to allow review of Jacket per OP-06212 as grievance on #0014411 Director Justed on grievance 2019 the # to review his field file at 67. The alleged that his Case Manager has not allowed him to review his field file. grievance was answered on August 13, 2019 as follows:

> After further review of the matter, Shay Pfaff, Case Manager for Echo Charlie Unit, said that in May 2019 Inmate Ezell gave a listing of the documents that he wanted to review. CM Pfaff pulled the documents that Inmate Ezell was allowed to review and gave him copies.
>
> Inmate Ezell's RELIEF IS GRANTED.

*Id.* at 65.

Despite receiving the requested relief, Ezell appealed that decision to the DOC ARA.  The

appeal was returned unanswered on November 1, 2019, with a notation that Ezell was on grievance

restriction, and the proper documentation was not attached.  In addition, Ezell's affidavit was

unacceptable.  He was given ten (10) days to correct and resubmit the appeal, but there is no

indication he did so.  *Id.* at 64.

**Grievance No. 2019-297:**

On July 8, 2019, Ezell submitted an RTS to Ms. Underwood, Grievance Coordinator,

complaining that Grievance No. 2019-267 had been returned, apparently for lack of an attached

RTS.  Ezell requested the following action:  "I would suggest you Exhaust my grievances

submitted 6-24-19 because the procedural defects is yours here at D.C.F. correct your returned

grievance do no threaten me with grievance restriction again."  *Id.* at 81-82.  Ms. Underwood's

response to the RTS advised:

> I/M Ezell, If you warrant being placed on Grievance Restriction, the Warden will
> place you on Restriction.  It is your responsibility to make sure your RTS stays
> attached to your grievance, not mine.  Either place the documents in an envelop
> [sic] or make sure they are securely attached to each other.

*Id.* at 81.

Grievance No. 2019-297, filed on August 6, 2019, complained about returned grievances.

Ezell claimed that on June 24, 2019, while in a law library cage, he timely submitted the RTSs by

attaching them with staples and tape to the grievances and submitting the documents to Maximum

Supervisor Ms. West.  He stated the reviewing authority could place a box on the units for

submission of grievances.  *Id.* at 79-80.

The grievance was returned unanswered on August 7, 2019, noting that the RTS issue was

not consistent with the grievance issue.  The returned grievance specifically noted that the RTS

stated Ezell wanted to be able to exhaust administrative remedies for the grievances submitted on June 24, 2019, and that no RTS was attached to grievances when they were received at the warden's office.  Further, because Ezell did not resubmit the grievances with the RTS forms within ten (10) days as allowed, the grievances were out of time and moot.  *Id.* at 77-78.

Ezell resubmitted Grievance No. 2019-297 on August 21, 2019.  *Id*. at 74-76.  The resubmission was returned unanswered on August 28, 2019, noting the RTS issue was not consistent with the grievance issue.  Ezell could not resubmit because of his continued failure to properly submit the grievance resulted in his being out of time.  *Id*. at 70-71.

Ezell next filed an appeal to the ARA.  The appeal was returned unanswered on September 19, 2019, because he was on grievance restriction, and proper documentation in the form of an affidavit was not included.  He was granted one final opportunity to resubmit the grievance.  *Id.* at 69.  Ezell did not resubmit, and no issues were exhausted through this grievance.

**Grievance No. 2019-299:**

On July 1, 2019, Ezell submitted an RTS to Case Manager Pfaff, complaining about having his medium transfer packet overridden to maximum security.  He stated that his transfer packet should be corrected to reflect a recommendation for a lower security because of his clear conduct.  The case manager responded to the RTS, noting the override was based on Ezell's past violent history, non-compliance with security directives, and staff assaults, one of which had not expired.  *Id.* at 87.

Ezell submitted a grievance related to this issue on August 6, 2019.  He stated, "C/M Pfaff is retaliating because offender has filed grievances and very clear offenders can submit transfer packet with one year clear especially if they have a medium security points meet requirement

should have been directed to do his Job C/M and prepare FAF so DOC could grant or deny transfer packet." *Id*. at 85-86.

The grievance was returned unanswered on August 7, 2019.  It noted that the grievance not filed within the specified time frame, and an RTS must be submitted within seven (7) days. Although the grievance stated that Ezell spoke with C/M Pfaff about the FAF packet on June 16, 2019, the RTS was not submitted to Pfaff until June 28, 2019.  Therefore, it was too late to submit the grievance.  *Id.* at 83-84.  No issues were exhausted by this grievance.

Ms. Underwood advises in her affidavit that DOC OP-090124 states that if prison officials determine that an inmate has abused the grievance process, his ability to submit a grievance may be restricted.  As set forth in the administrative remedies policy, grievance restriction does not prevent an inmate from utilizing the grievance process; it instead adds additional requirements. While on grievance restriction, an inmate must submit an affidavit containing a complete, accurate, and legible list by grievance number, date, description, and disposition at each level for each of the grievances he submitted within the previous twelve (12) months.  Each page must be legible, signed, and verified, and the document must be notarized at the end of the text.  If the inmate does not comply with the requirements for submitting a grievance or appeal while on grievance restriction, the grievance or appeal will not be answered.  If the inmate complies with the requirements, the grievance or appeal may proceed.  Dkt. No. 204-2 at 17.

On August 7, 2019, the warden placed Ezell on grievance restriction, noting the grievances he submitted with the intention of harassment, the repeated submission of grievances or RTS forms about an issue that previously was addressed by staff, and his continued procedural defects such as submitting additional pages after having been previously warned.  *Id.*

Ms. Underwood provided Ezell a letter from the warden stating Ezell was warned about being placed on restriction on July 1, 2019, and he was being placed on restriction for one year, from August 7, 2019, through August 6, 2020.  Underwood instructed Ezell that during that period he would have to follow all the steps outlined in Section IX of OP-090124 before submitting a grievance.  The offenders' mail log indicates that the grievance restriction letter was received by Ezell on August 14, 2019.  *Id*. at 18; Dkt. No. 204-4 at 88.

**Grievance No. 2019-342:**  Ezell's next grievance, No. 2019-342, was submitted on September 17, 2019, and was designated as an "emergency."  The grievance concerned Ezell's assertion that he was denied access to a notary.  Under the section concerning the requested action, Ezell stated, "Ms. Hoover's Job of Notary is only to verify my signature thats it not to deny Notary."  Dkt. No. 204-4 at 98-100.

The grievance was returned unanswered on October 7, 2019.  The return memorandum noted that:  (1) an answered RTS was not attached, as required; (2) Ezell was on grievance restriction, and proper documentation was not included; and (3) the grievance was not of an emergency nature.  He was granted ten (10) days to correct and resubmit the grievance.  *Id.* at 96-97.

Instead of correcting and resubmitting the grievance, Ezell submitted an appeal to the ARA.  The appeal was returned unanswered on November 15, 2019, with the ARA noting that Ezell was on grievance restriction, and the proper documentation was not included.  His affidavit was not acceptable, because he had added content after it was notarized.  He was granted one final opportunity to properly resubmit a corrected affidavit within ten (10) days.  *Id.* at 95.

Related to this same issue, Ezell submitted an RTS on October 17, 2019, to Ms. Hoover and UM Ade, complaining about his notary request that was denied as personal.  Under "Action

Requested" on the form, Ezell stated, "Do your job, provide Notary per OP-030115 Access to Court. Stop prohibiting court access in Rataliation [sic]."  The October 22, 2019, RTS response stated that "if the proper procedure is followed and doc's are approved to be notarized, it will be done."  *Id.* at 92.  Ezell resubmitted Grievance No. 2018-342 on November 14, 2019.  Under the form section regarding the action the reviewing authority may lawfully take, action you believe the reviewing authority could take, Ezell stated, "Ms. Hoover need to be removed from Notary of Echo Max as OP-030115 Access to Court directs offender to Law Library for Notary per 030115." *Id.* at 91.

The resubmitted grievance was returned unanswered on November 25, 2019.  The attached memorandum noted that:  (1) the grievance form was not completed correctly; (2) Ezell was on grievance restriction and had not included the proper documentation;  and (3) Ezell was out of time because of his continuing failure to properly submit the grievance.  *Id.* at 89-90.  No issues were exhausted by way of this resubmission.

**Grievance No. 2019-343:**  Ezell next submitted an RTS to Warden Yates, making vague complaints about DOC policies at DCF.  *Id.* at 105-6.  The response, dated August 14, 2019, stated: "Unclear on action requested if you are asking for a copy of the policy, fill out an offender request and a disbursement form so you can pay for the copy.  Otherwise, restate your action requested." *Id.* at 105.

Ezell filed Grievance No. 2019-343, on September 17, 2019, complaining he was threatened with grievance restriction and denial of services.  His requested action was:  "Per OP-090124 D.O.C. Policy the appropriate staff is suppose [sic] to respond to inmate request/Request to Staff Reviewing Authority can not intentionally place offenders on Grievance Restriction because submitted IR, R.T.S., as policy suggest OP-090124."  *Id.* at 104.

The grievance was returned unanswered on October 7, 2019, with notations that: (1) the grievance not filed within specified time frame of fifteen (15) days from the RTS response; (2) the RTS submitted to CM Pfaff was untimely submitted twelve (12) days from the date of incident; (3) an answered RTS form addressed to the correct staff member must be attached to the grievance; (4) the RTS was not consistent with the requested relief in the grievance; (5) the grievance and RTS must be specific as to complaint, dates, places, personnel involved, and how inmate was affected; (6) only one issue/incident is allowed for each grievance and RTS; and (7) Ezell was on grievance restriction, but proper documentation was not included. *Id.* at 102-03.

Ezell appealed the returned grievance to the ARA, however, the appeal was returned to him unanswered on November 15, 2019. The ARA noted that Ezell was on grievance restriction, and the proper documentation was not attached. In addition, his affidavit was not acceptable because he had added content after it was notarized. He was given ten (10) days to correct the appeal and resubmit, but he failed to do so. *Id*. at 101; Dkt. No. 204-2 at 20.

**Grievance No. 2019-344:** On July 23, 2019, Ezell submitted an RTS to Officer Pierce, complaining that he was denied a chair when he was in the law library cage on Echo Charlie. Ezell asked to be told clearly why the officer refused to provide a chair after he had requested one. The RTS response stated that there would be a chair provided for law library cages, and if one is not in the cage, it can be requested. Dkt. No. 204-4 at 112.

Ezell submitted a grievance on September 17, 2019, complaining that a chair should have been provided to him on July 18, 2019. His requested action stated: "A chair should have been provided then at that moment instead of been denied by a number of staff in retaliation because there are chairs in the Law Library on the medium yard Echo Max should be provided with the

same opportunity as Medium Yard--SAME EXACT OPPORTUNITY." *Id*. at 110 (emphasis in original).

The grievance was returned unanswered on October 7, 2019, because:  (1) it was not filed within fifteen (15) days after Ezell received the RTS response on August 15, 2019; and (2) Ezelle was on grievance restriction and did not include the proper documentation. *Id*. at 108-09.  Ezelle appealed the decision to the ARA, however, the appeal was returned unanswered on November 15, 2019.  The returned appeal stated that Ezell was on grievance restriction, but the proper documentation was not attached.  In particular, his affidavit was unacceptable because he added content after it was  notarized.  He was given ten (10) additional days to correct and resubmit the appeal.  *Id*. at 107.  Ezelle did not resubmit the appeal, thus no issues were exhausted by this grievance. Dkt. No. 204-2 at 21.

**Grievance No. 2019-365:**  On September 13, 2019, Ezell submitted an RTS to Ms. Hoover, complaining that her August 27, 2019, denial of notary service prevented him from presenting a grievance with a notarized affidavit.  The September 25, 2019, response advised that when his paperwork is complete, with no blanks, he could send a notary request to Ms. Hoover, then sign the document in front of her.  Dkt. No. 204-4 at 117.

Ezell filed Grievance No. 2019-365 regarding this matter, which was returned unanswered on October 25, 2019, because he had not submitted his RTS within seven (7) days of the incident. The response further stated that Ezell was on grievance restriction, and he had not submitted the proper documentation. *Id.* at 114-116. THE DISTRICT COURT DID NOT ERR.

PLAINTIFF-APPELLANT FAILED TO PROPERLY EXHAUST ADMINISTRATIVE REMEDIES

Ezell appealed that decision to the ARA, which returned the appeal unanswered on November 15, 2019.  The ARA noted that Ezell was on grievance restriction, and the proper documentation was not attached.  Specifically, his affidavit was not acceptable, because

added content after it was notarized.  He was given ten (10) days to correct the appeal and resubmit it.  He, however, chose not to do so.  Ezell's issue, therefore, was not exhausted.  *Id*. at 113.

**Grievance No. 2019-401:**  On September 13, 2019, Ezell submitted an RTS to Sgt. Key, the investigating officer, complaining that Key had issued Ezell a misconduct, then threatened him with another one and called him a "bitch."  Ezell asked that Key stop retaliating against him "behind the law library."  The response to the RTS instructed Ezell to direct his concerns to the disciplinary coordinator.  *Id.* at 123-25.

Ezell filed grievance No. 2019-401 on November 14, 2019, complaining about a misconduct and that he had been called a "bitch."  His stated he believed the reviewing authority could take disciplinary action against Correctional Officer Key or award monetary compensation. He further stated, "just . . . exhaust my grievance or deny it For Affidavit reason just don't retaliate anymore." *Id.* at 122.  The grievance was returned unanswered on November 25, 2019, because Ezell was on grievance restriction, and his affidavit was invalid.  *Id*. at 121-22.  He was granted ten (10) days to complete the noted corrections.  *Id.* at 122.  Ezell, however, did not resubmit.  *Id.*

Defendant Underwood states in her affidavit that Ezell is "very familiar with the Oklahoma DOC inmate/offender grievance process," and Ezell "clearly understands how to pursue a grievance properly through to administrative completion," as demonstrated by the administrative remedies records.  Dkt. No. 204-2 at 23.

After careful consideration of the pleadings and other submitted materials in this case, the Court is of the view that there are no genuine issues of material fact concerning whether Ezell's claims are unexhausted.  Therefore, summary judgment must be granted to Defendants Damon Hininger, James Yates, Gentry, Perez, Terry Underwood, Jessica Patterson, Tiffany Ade, S. Pfaff, Carla Hoover; Pierce, Bullock, Keys, and Andrew Smith, pursuant to Fed. R. Civ. P. 56(a).

**INJUNCTIVE RELIEF**

In his amended complaint, Ezell requested a preliminary injunction to prevent the defendants from continued denial of access to the courts, discrimination, and retaliatory behavior. He also wanted a preliminary injunction to protect other offenders from retaliation when they are willing to provide affidavits in support of an offender's claims.  Dkt. No. 56 at 15.

To be entitled to injunctive relief, the movant must establish a violation of his constitutional rights.  *Rizzo v. Goode*, 423 U.S. 362, 377 (1976).  Ezell, however, has failed to plead any facts to sustain a finding of an ongoing constitutional violation.  Therefore, he is not entitled to injunctive relief.  Further, Ezell may not be granted relief for other inmates.  The Court will only consider claims "based upon the violation of a Ezell's personal rights, and not the rights of someone else." *Archuleta v. McShan*, 897 F.2d 495, 497 (10th Cir. 1990).  Accordingly, Ezell's request for injunctive relief is denied.

**CONCLUSION**

IT IS THEREFORE ORDERED that:

(1) On April 11, 2022, the motion to dismiss or for summary judgment by the DOC defendants was granted.  Dkt. No. 214.

(2) The dismissal of certain claims against the DOC defendants concerning access to the courts, the Sixth Amendment, and the Fourteenth Amendment against the DOC defendants [Dkt. No. 214 at 6-9] shall count as a "PRIOR OCCASION" or "STRIKE," pursuant to 28 U.S.C. § 1915(g).

(3) Summary judgment is granted to Defendants Damon Hininger, James Yates, Gentry, Perez, Terry Underwood, Jessica Patterson, Tiffany Ade, S. Pfaff, Carla Hoover; Pierce, Bullock, Keys, and Andrew Smith, pursuant to Fed. R. Civ. P. 56(a).

(4) Ezell is denied injunctive relief.

Dated this 25th day of January 2023.

_____

JOHN F. HEIL, III
UNITED STATES DISTRICT JUDGE